UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21162-CIV-LENARD/O'SULLIVAN

**ENERGY SOURCE, INC. and RMS
OIL AND GAS, LLC**

      Plaintiffs,

vs.

**GLEEKO PROPERTIES, LLC, et al.**,

      Defendants.
_____/

<u>**ORDER DENYING DEFENDANTS G GROUP INTERNATIONAL, LLC AND
TYRONE S. GRANDBERRY'S MOTION TO DISMISS (D.E. 15)**</u>

  **THIS CAUSE** is before the Court on Defendants G Group International, LLC and Tyrone S. Grandberry's Motion to Dismiss the Complaint (D.E. 15), filed on October 4, 2010. Plaintiffs Energy Source, Inc. and RMS Oil and Gas, LLC, filed their Memorandum in Opposition (D.E. 29) on November 8, 2010, to which Defendants replied (D.E. 31) on November 17, 2010. Upon review of the Motion, Opposition, Reply and the record, the Court finds as follows.

**I. Background**

  This case involves a sugar deal gone bad. In or around February 2008, Plaintiff Energy Source, Inc. ("ESI"), a Florida company, entered into a an agreement to buy sugar from a Brazilian company. (Compl. ¶ 16, D.E. 1.) In order to commence the sugar buying arrangement, ESI would have to issue a bank guarantee to provide security to the sugar seller. (*Id.* ¶ 19.) Plaintiff RMS Oil and Gas, LLC agreed to provide ESI with the

bank guarantee procurement fee, $439,200.00, in exchange for a share of profits from the sugar agreement.  (*Id.* ¶ 24.)  Plaintiffs had been approached by Defendant Donald Ramsey who offered to connect them with parties who would, in exchange for the procurement fee, secure the bank guarantee from HSBC.  (*Id.* ¶ 21.)

Ramsey subsequently introduced Plaintiffs to Defendants Gleeko Properties, LLC, G Group International, LLC, Tyrone S. Grandberry, Eddie Pace Singletary, Hazarie International Trade Solutions, Angela Hazarie and ANF Media Tech, LLC.  (*Id.* ¶ 22.)  Defendants made representations to ESI that they would be able to procure the bank guarantee from HSBC Bank for the specified procurement fee.  Defendant William F. Dippolito, sole shareholder of Defendant William F. Dippolito P.S., Inc., was retained to act as escrow agent for the procurement fee.  (*Id.* ¶ 27.)  On or around April 11, 2008, ESI sent the procurement fee to Dippolito via wire transfer for placement into escrow.  (*Id.* ¶ 28.)

Defendants allegedly never procured the bank guarantee from HSBC and Plaintiffs' sugar agreement fell through.  (*Id.* ¶¶ 31-32.)  Dippolito never returned Plaintiffs' procurement fee.  Instead, Plaintiffs allege that Dippolito disbursed the escrowed guarantee fee to all other Defendants and they retained these funds for themselves.  (*Id.* ¶¶ 29-30.)

Plaintiffs filed suit in this Court on April 9, 2010, alleging claims of: Breach of Contract (Count I); Unjust Enrichment (Count II); Negligent Misrepresentation (Count III); Breach of Fiduciary Duty (Count IV); Fraud (Count V); Conversion (Count VI),

Violations of Section 17(a) of the Securities Act of 1933 (Count VII); Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (Count VIII); Aiding and Abetting Violations of the Securities Acts (Count IX); Violations of Section 20(a) of the Exchange Act (Count X); 18 U.S.C.A. § 1962(c) RICO (Count XI), Conspiracy to Commit Tortious and Wrongful Acts (Count XII); Accounting (Count XIII); and Constructive Trust (Count XIV).  As of the date of this Order, all Defendants save for Grandberry and G Group International, LLC have defaulted.

    **A.**    **Motion to Dismiss**

Grandberry is a resident of Virginia and the president of G Group International, LLC which is headquartered in Virginia.  (*Id.* ¶¶ 6-7.)  Both he and G Group now move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(2) and (3), lack of personal jurisdiction and improper venue.

Defendants first argue that no personal jurisdiction exists over them in this Court. (Mot. at 3.)  They argue that the Florida long-arm statute does not confer either general nor specific jurisdiction over Defendants by virtue of their acts in Florida.  (*Id.* at 4-7 (citations omitted).)  In support of this argument, Grandberry submits a Declaration (D.E. 16) wherein he itemizes both his and G Group's ties to Virginia and their lack of personal and business dealings in Florida.  Defendants also contend they lack such minimum contacts with Florida that the Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over them.  (Mot. at. 7-8 (citations omitted).) Finally, Defendants claim that venue is improper under 28 U.S.C. 1391(b) as the majority

of Defendants do not reside in Florida, a substantial part of the events that gave rise to this action did not occur here and neither of the two remaining defendants are found here. (*Id.* at 8-9 (citations omitted).)

In their Opposition, Plaintiffs take issue with all of Defendant's arguments. Plaintiffs claim that Florida's long-arm statute, Fla. Stat. § 48.193(1)(b) provides jurisdiction over parties that commit tortious acts in the state. (Opp. at 4.) In support, they attach the Affidavit of Carlos Florez (D.E. 29-1), president of ESI, to establish that Defendants and their co-conspirators' alleged fraudulent statements and misrepresentations were specifically aimed at Florida with the intent to defraud Plaintiffs. (Opp. at 5-6.) Plaintiffs also argue that the long-arm statute reaches all alleged participants of a civil conspiracy in which at least one act in furtherance is committed in Florida. (*Id.* at 6 (citation omitted).) For similar reasons, jurisdiction in Florida would not violate the Due Process Clause. (*Id.* at 6-7.)

As to Defendants' venue argument, Plaintiffs contend that a substantial part of the alleged fraud took place here, Plaintiffs' home forum should be entitled to substantial weight, judicial efficiency is promoted by bringing the action here and Florida has strong public policy concerns regarding adjudicating allegations of fraud committed against a resident company. (*Id.* at 7-9.)

In their Reply, Defendants minimize the number and significance of their telephonic and electronic mail contacts with Plaintiffs in Florida, claiming that in their totality, these contacts do not satisfy the "connexity" requirement for personal

4

jurisdiction. (Reply at 2-3 (citations omitted).) Defendants also note that eight other defendants have defaulted and will not defend this suit, therefore, it will not impose a huge burden upon Plaintiffs to sue Grandberry and G Group in their home state of Virginia. (*Id.* at 3-4.)

## II. Personal Jurisdiction

A district court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623 (11th Cir.1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair,* 94 F.3d at 626. If the requirements of the long-arm statute are satisfied, then the court must inquire as to, (1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice." *Id.* at 630-31 (quoting *International Shoe v. Washington,* 326 U.S. 310 (1945).

Plaintiffs base their allegations of personal jurisdiction solely on Section 48.193(1)(b) of the Florida long arm statute, arguing that Defendants' commission of a tortious act within the state subjects them to jurisdiction here. (Opp. at 4.)

### A. Personal Jurisdiction Under Florida's Long-Arm Statute Section 48.193(1)(b)

Section 48.193(1)(b) provides that:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her

> personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . .
> (b) Committing a tortious act within this state.

Here, Plaintiffs allege that Grandberry and G Group committed negligent misrepresentation, fraud, conversion and civil conspiracy to commit each of these torts.[1] Each of these torts, if adequately pled and proved prima facie, would satisfy the requirements of the § 48.193(1)(b) and confer personal jurisdiction over a defendant. *Cf. Zurich Am. Ins. Co. V. Renasant Ins. Co.*, 2011 U.S. Dist. LEXIS 17641, **8-9 (M.D. Fla. Feb. 23, 2011) (negligent misrepresentation); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2010 WL 1531489, *13 (S.D. Fla. Apr. 16, 2010) (Cohn, J.) (fraud and civil conspiracy); *Future Technology Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000) (conversion).

Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction. *See Future Tech,* 218 F.3d at 1249; *Prentice v. Prentice Colour, Inc.,* 779 F. Supp. 578, 583 (M.D.Fla.1991). The Eleventh Circuit has also stated:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

---

[1] The Court need not consider Plaintiffs' other, non-tort, causes of action at this time as they are not alleged to be the basis of personal jurisdiction.

6

*Polskie Linie Oceaniczne v. Seasafe Transport,* 795 F.2d 968 (11th Cir. 1986) (citing *Electro Engineering Products Co., Inc. v. Lewis,* 352 So. 2d 862 (Fla. 1977)).  Florida courts consider both sworn affidavits together with the pleadings in deciding whether a defendant has met his burden in this regard.  *Atlas Aircraft Corp. v. Buckingham,* 302 So.2d 163. (Fla. 4th DCA 1974).

The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony.  *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990). Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the plaintiff.  *Id.* (citing *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988).

The Court's review of the Complaint finds that Plaintiffs have alleged all elements of the torts of negligent misrepresentation, fraud, conversion and conspiracy. Plaintiffs allege that Grandberry and G Group, along with the other Defendants, made representations to Plaintiffs that they could procure the bank guarantee, despite having no actual intention to do so, in exchange for the procurement fee.  (*See* Compl. ¶¶ 67-73.)  In the alternative, Defendants' representations were made carelessly and negligently.  (*See id.* ¶ 57.)  Plaintiffs further allege that they relied on Defendants' representations and consequently entered into the Letter of Intent & Memorandum of Understanding (D.E. 1-3) with, *inter alia*, G Group and Grandberry, and consummated the agreement by wiring the procurement fee to Dippolito on April 11, 2008.  (*See*

Compl. ¶¶ 23-28.)  Once Plaintiffs wired the procurement fee to Dippolito, they allege that it was disbursed from escrow and retained by one or more Defendants, despite the funds legally belonging to Plaintiffs.  (*See id.* ¶¶ 74-76.)

Plaintiffs also allege an ongoing civil conspiracy between all Defendants to obtain and keep Plaintiffs' procurement fee.  (*See id.* ¶¶ 105-110.)  While the conspiracy count attempts to encompass several non-tortious acts, for the purposes of this Motion, it is appropriately applied to Plaintiffs' claims of conversion and fraud.

In their Motion, Grandberry and G Group focus on their lack of contacts with Florida.  Most of what Grandberry avers in his Declaration[2] is not germane to the specific jurisdiction alleged by Plaintiffs; however, he makes three relevant assertions.  First, Grandberry never met with Plaintiffs in Florida nor did he sign the Letter of Intent or any other documents in Florida. (Grandberry Decl. ¶ 12.)  Similarly, no employee of G Group ever traveled to Florida in connection with the parties' business dealings.  (*Id.* ¶ 24.)  Third, G Group did not receive any consideration or compensation in connection with the parties agreement.  (*Id.* ¶ 25.)

Defendants also dispute that the connexity requirement is met – contending that any calls or e-mails sent by them did not proximately give rise to Plaintiffs' causes of action. (Reply at 2-3.)

For the purpose of § 48.193(1)(b), the defendant does not have to be physically

---

[2]    Plaintiffs seemingly attempt to have this Court disqualify Grandberry's Declaration as unsworn, however his unsworn Declaration is submitted "under penalty of perjury" and therefore has the same effect.  *See* 28 U.S.C. § 1746.

present in Florida and a defendant can commit the tortious act based on telephonic, electronic, or written communications into Florida so long as the cause of action arises from those communications. *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002); *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1296 (11th Cir. 2009); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F.Supp.2d 1213, 1222-23 (S.D. Fla. 2009).

Plaintiffs' Opposition and the accompanying Affidavit of Carlos Florez further establish that communications were made into Florida in February and March 2008, by Grandberry, G Group and the other Defendants. (Florez Aff. ¶¶ 18-19.) The communications were made to represent Defendants' ability to procure the bank guarantee and were relied upon by ESI in entering into the Letter of Intent with Defendants. (*Id.* ¶ 19.) The Florez Affidavit attaches two emails from Grandberry, sent on May 25, 2008 and June 20, 2008, indicating Defendants would still attempt to procure the bank guarantee or refund $150,000 of Plaintiffs money. (*See* Grandberry E-mails, Exs. to Florez Aff. at 6, 11.) Based on Defendants' subsequent nonperformance and failure to refund Plaintiffs' funds to date, these emails are cited as examples of further misrepresentations in support of Defendants' tortious activity.

In addition, defaulted Defendants Eddie Pace Singletary and Gleeko Properties, LLC are located in Florida. Singletary, as representative of Gleeko, signed the Letter of Intent, along with Florez (representative of ESI), Grandberry (representative of G Group) and Angela Hazarie. Plaintiffs argue that Singletary and Gleeko's involvement

9

in the alleged tortious activity indicate that at least one act in furtherance of the conspiracy was committed in Florida.  (Opp. at 6, citing *Axa Equitable Life Ins. Co. v. Infinity Fin. Group*, LLC, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).)

Fraud and negligent misrepresentation are torts that can establish personal jurisdiction.  *OSI Industries, Inc. v. Carter*, 834 So. 2d 362, 367 (Fla. 5th DCA 2003) (discussing both intentional and negligent misrepresentation as torts under the long-arm statute). In *Wendt*, the Florida Supreme Court found long-arm jurisdiction where an out-of-state defendant allegedly made "telephonic, electronic, or written communications into Florida" and the cause of action arose from those communications. 822 So.2d at 1260; *see Acquadro v. Bergeron*, 851 So. 2d 665 (Fla. 2003) (allegations sufficient to support jurisdiction where nonresident allegedly committed defamation in a single telephone call into Florida); *Machtinger v. Inertial Airline Services*, Inc., 937 So.2d 730, 735 (Fla. 3d DCA 2006) (fraudulent misrepresentations made from outside Florida and directed into Florida by phone, fax, and writings constitute tortious acts committed within Florida under Florida's long-arm statute). Moreover, the *Wendt* Court held that a defendant's physical presence is not required in order to "commit a tortious act in Florida." *Id*. Given Defendants failure to dispute their involvement in phone calls and e-mails directed into Florida which induced Plaintiffs to contract with them and wire the

procurement fee to the purported escrow agent, long-arm jurisdiction has been established.[3]

Likewise, the allegation of conversion can establish long arm jurisdiction over a non-resident defendant. *See Future Tech.*, 218 F.3d at 1250. Plaintiffs' claim for conversion is arguably bolstered by Grandberry's May 25 and June 20, 2008 e-mails, in which Defendants (1) continue to make representations of their ability to procure the bank guarantee and (2) acknowledge that at least $150,000 should be rightfully returned to Plaintiffs should they fail. Assuming neither Grandberry nor G Group ever received a portion of the procurement fee, Grandberry's e-mails still suffice as a prima facie showing of his alleged participation in a scheme to allow his co-defendants to keep Plaintiff's funds.

---

[3] This assumes that the tort(s) actually occurred. Here, Defendants do not challenge Plaintiffs' ability to adequately plead their causes of action. Moreover, that analysis would be premature on a motion to dismiss for lack of personal jurisdiction. "Where the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) quoting *Chatham Condo. Assocs. v. Century Village, Inc.*, 597 F.2d 1002, 1011 (5th Cir. 1979). *Eaton* relied on binding Fifth Circuit precedent that held that when substantive and jurisdictional issues are intertwined, a finding on jurisdiction should not be rendered until a decision on the merits could be resolved. *See id.* (citations omitted). Based on the Eleventh Circuit's directive, this Court will exercise its discretion to reserve further ruling on the jurisdictional issues until a decision on the merits can be made. *See Exhibit Icons, LLC v. XP Cos.*, LLC, 609 F. Supp. 2d 1282, 1297 (S.D. Fla. 2009); *Nissim Corp. v. Clearplay, Inc.*, 351 F. Supp. 2d 1343, 1351-52 (S.D. Fla. 2004).

If at a later stage in these proceedings it becomes clear that a cause of action giving rise to personal jurisdiction cannot be adequately pled or proved, Defendants may once again raise the defense of personal jurisdiction.

Long-arm jurisdiction has further been established by Plaintiffs' claims for conspiracy. Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida. *See Machtinger,* 937 So.2d at 734-36; *Wilcox v. Stout,* 637 So.2d 335, 336 (Fla. 2d DCA 1994). Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state. *See Mazer,* 556 F.3d at 1281-82.

In this case, the complaint alleges a conspiracy to obtain and unlawfully keep Plaintiffs' funds. Two of the Defendants, including a signatory to the Letter of Intent, are citizens of Florida and presumably were alleged to be in contact with Plaintiffs prior to its execution and the wiring of escrow funds. Grandberry and G Group are alleged by Plaintiff to have formed a group with these Defendants for the purpose of procuring the bank guarantee. Thus, the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida by Singletary and Gleeko. Florida's long-arm statute therefore reaches all participants in that conspiracy, even those not otherwise connected to Florida, such as Grandberry and G Group. *Cf. Axa Equitable Life Ins.,* 608 F. Supp. 2d at 1354 (finding jurisdiction in Florida over Delaware-based defendants who were linked by virtue of their alleged participating in the civil conspiracy); *Arch Aluminum & Glass Co. v. Haney,* 964 So.2d 228, 234-35 (Fla. 4th DCA 2007) (finding personal

jurisdiction not supported because "the tort did not occur in Florida, and neither did the conspiracy).

**B.     Federal Due Process Considerations**

The Eleventh Circuit has held that allegations of intentional torts satisfy the "minimum contacts" requirement and support the exercise of personal jurisdiction over a nonresident defendant with no other contacts with the forum. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008). Here, Plaintiffs allege that Defendants committed fraud, conversion and participated in a conspiracy to deprive Plaintiffs of $439,200. Two of the co-conspirators are Florida residents. Thus, the allegations of the complaint are sufficient to permit the inference that Grandberry and G Group "purposely directed" their activities at Plaintiffs. *See Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 774 (1984); *Axa Equitable*, 608 F. Supp. 2d at 1355.

Other factors, such the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute, weigh in favor of permitting this Court to exercise jurisdiction over Grandberry and G Group. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

Grandberry states that litigation in Florida will create an unreasonable burden and undue financial hardship on both himself and G Group. But without more, the Court is unable to discern any significant burden that would make litigation here more

difficult for Grandberry and G Group than it would be for Plaintiffs bringing the same suit in Virginia. Plaintiffs, however, have substantial interests in obtaining convenient and effective relief by asserting all of their claims against all Defendants in a single action. Splintering Grandberry and G Group off into a separate action in a different district would create potential for inconsistent findings on damages, as they are jointly and severally liable with all of the presently-defaulted Defendants. Finally, because two additional Florida entities are involved in the commission of the alleged torts and conspiracy, the Courts of this state have a significant interest in resolving this dispute. *See Axa Equitable*, 608 F. Supp. 2d at 1355.

Accordingly, the Court finds that the Florida long-arm statute confers personal jurisdiction over Grandberry and G Group in this action and the exercise of jurisdiction over these Defendants would not violate the Due Process Clause of the Fourteenth Amendment.

## III.   Venue

Defendants also move to dismiss this action under Federal Rule of Civil Procedure 12(b)(3), improper venue.[4] 28 U.S.C. § 1391 provides that an action not based on diversity of citizenship may be brought only in:

(1) a judicial district where any defendant resides, if all defendants reside in the

---

[4] Defendants' Reply includes a new request to transfer venue to Virginia. (*See* Reply at 1.) The Court declines to consider transfer as a possible remedy since Defendants did not raise it in the initial Motion (and therefore Plaintiffs did not get an opportunity to address its merits) and Defendants offer no legal or factual support for this alternative relief.

>  same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Subsections (1) and (3) are not applicable here as none of the ten Defendants reside in South Florida. Therefore, if venue is proper, it must be because a substantial part of the events giving rise to the claim occurred here.

To evaluate where the claim arose for the purposes of § 1391(b)(2), both the Eleventh Circuit and this District utilize the "weight of the contacts" test. *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 855 (11th Cir. 1988); *Burger King Corp. v. J.T. Thomas*, 755 F. Supp. 1026, 1028 (S.D. Fla. 1991). Once challenged, the burden is on the plaintiff to make a showing that venue is proper in this district. *Burger King*, 755 F. Supp. at 1028.

Ultimately, the "contacts" in this case are anything but clear. The ten Defendants are scattered about the North American continent and the bulk of their separate communications and transactions are currently unknown. What this Court does know, based on the Complaint and the Parties' affidavits, is that the Defendants, including Grandberry and G Group, directed communications into this district for the purpose of soliciting ESI's business and moneys, the funds in dispute came from a Florida financial institution and the failure to procure the bank guarantee and return the funds to Plaintiffs caused harm to ESI in this District. Therefore, application of 'weight of the contacts' test on the few known contacts in this dispute results in this Court finding that venue is proper in this District against Grandberry and Gleeko. *See*

*Delong*, 840 F.2d at 855.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants Tyrone S. Grandberry and G Group International, LLC's Motion to Dismiss Plaintiffs' Complaint (D.E. 15), filed on October 4, 2010, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of July, 2011.

*Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**